**Raymond K. PANARAS, Plaintiff–Appellant,**

v.

**LIQUID CARBONIC INDUSTRIES CORPORATION and CBI Industries, Incorporated, Defendants–Appellees.**

No. 95–1784.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1995.

Decided Jan. 19, 1996.

Carey M. Stein (argued), David M. Bagdade, Ashman & Stein, Chicago, IL, for Plaintiff–Appellant.

Robert L. Byman, Kenneth R. Dolin, Jason L. Peltz (argued), Jenner & Block, Chicago, IL, for Defendants–Appellees.

Before BAUER, CUDAHY, and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiff Panaras appeals the dismissal of his claims against Liquid Carbonic Industries Corp. and CBI Industries, Inc. (collectively, LCI). His complaint alleged violations of the notice provisions of the Employee Retirement Income Security Act of 1974 (ERISA) and breach of his employment contract. The claims are based on LCI's amending of its severance benefit plan so as to condition benefits on the signing of a release disclaiming most employment-related claims against LCI.

The district court dismissed the action pursuant to LCI's 12(b)(6) motion, finding that the breach of contract claims were preempted by ERISA, that Panaras lacked standing to bring his ERISA claim and that he failed to allege any prejudice resulting from LCI's violations. We find that Panaras did have standing to raise his ERISA complaint.

However, we uphold dismissal of the ERISA count because Panaras failed to allege sufficient prejudice resulting from his lack of notice of the changes in the severance plan. We agree with the district court that Panaras' state law claims are preempted by ERISA.

Panaras was employed by LCI for over twenty-six years. During his employment he was aware that LCI provided a program of severance benefits which were paid to employees upon involuntary termination of their employment. On February 1, 1994, LCI altered the terms of its severance benefits plan so as to condition eligibility for benefits on a release of claims against the company. Panaras alleges that he was not informed of this change. In July, 1994 Panaras' employment with LCI was terminated involuntarily. Prior to his termination he had yet to be apprised of the change in the severance plan. Rather than executing the release, Panaras filed this action. He is also pursuing an age discrimination claim in a separate proceeding. *Panaras v. Liquid Carbonic Industrial Corp.*, No. 95 C 2963 (N.D.Ill.) (Holderman, J.).

## The ERISA Claim

### I. Background

■ ERISA provides comprehensive regulation of certain employee benefit plans. One of its primary purposes is "to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto,...." 29 U.S.C. § 1001(b). *See also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113–14, 109 S.Ct. 948, 955–56, 103 L.Ed.2d 80 (1989). In accordance with this purpose, ERISA requires that employers provide their employees with summary plan descriptions of covered welfare benefit programs. These plan descriptions must be filed with the Department of Labor. 29 U.S.C. §§ 1022–1024. A summary of a plan must be furnished both to plan participants, 29 U.S.C. § 1024(b)(1)(B), and to the Department of Labor, 29 U.S.C. § 1024(a)(1)(B), within 120

days after the plan becomes subject to the notification requirement (generally, upon its initial adoption). Thereafter employees must be notified of material modifications of covered benefit plans within 210 days following the plan year in which the modification is made. 29 U.S.C. § 1024(b)(1). Employers are not required to provide severance benefits, and, unless otherwise contractually bound, may modify them at will. *Young v. Standard Oil (Indiana),* 849 F.2d 1039, 1044–45 (7th Cir.1988), *cert. denied,* 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). However, if an employer does provide a severance plan, it is an "employee welfare benefit plan," 29 U.S.C. § 1002(1), and must comply with the ERISA notification requirements. *See, e.g., Kreutzer v. A.O. Smith Corp.,* 951 F.2d 739, 743 (7th Cir.1991).

ERISA expressly provides for civil enforcement of its provisions:

A civil action may be brought—
(1) by a participant or beneficiary—
. . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132.

Panaras' ERISA claim is brought pursuant to this provision.[1] He argues that he qualifies as a participant in the severance plan because LCI's violation of the ERISA notice requirements invalidates the modification of the plan, at least with respect to him. He thus contends that he should be allowed to recover under the terms of the old severance plan.

 Technical violations of ERISA's notification provisions, however, ordinarily do not provide a basis for monetary relief. Monetary relief is available only "in exceptional

cases." Specifically, "the employer must have acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their [sic] employees by inducing their reliance on a faulty plan summary before recovery for procedural violations is warranted." *Kreutzer,* 951 F.2d at 743. *See also Godwin v. Sun Life Assurance Co.,* 980 F.2d 323, 328 (5th Cir.1992) ("an amendment to a welfare benefit plan is valid despite a beneficiary's lack of personal notice, unless the beneficiary can show active concealment of the amendment, or some significant reliance upon or possible prejudice flowing from the lack of notice").[2] When such exceptional cases arise, however, the court may provide relief by granting the benefits. *Veilleux v. Atochem North America, Inc.,* 929 F.2d 74, 76 (2d Cir.1991) ("Where violations of ERISA disclosure provisions work a substantive harm on plaintiffs who are denied benefits under the improperly disclosed plan, courts may find that these violations sufficiently taint the employer's denial of severance pay so as to warrant ... grant[ing] the benefits." (internal quotations omitted)). This is the relief which Panaras seeks.

Panaras alleges that LCI actively concealed its plan in order to induce employees to remain in its employ; that this concealment constituted bad faith; and that Panaras was prejudiced in his ability to plan his finances and career by his lack of knowledge of the change. The inquiry in this case thus focuses on two questions: First, is Panaras a "participant" with standing to sue within the meaning of § 1132(a)(1)? Second, do the facts alleged in the complaint, if true, suffice to constitute an exceptional case which can provide a basis for the monetary relief requested?

## II. Standing as a Participant

 The term participant is statutorily defined as "any employee or former employee

---

1. Panaras also claims to bring his complaint pursuant to § 1132(c) which provides relief when an administrator refuses to provide plan information upon request. The facts of this case do not suggest any refusal to respond to a request, which might provide grounds for relief under this provision, and Panaras does not explain how he might fall under its umbrella. We therefore focus our attention on § 1132(a).

2. Some circuits apparently do not provide monetary relief for disclosure violations under *any* circumstances (except refusal to respond to a request for information, for which express statutory relief is provided, 29 U.S.C. § 1132(c)). *See, e.g., Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155 (3d Cir.1990); *Lewandowski v. Occidental Chem. Corp.,* 986 F.2d 1006 (6th Cir.1993). We have never taken such a narrow approach.

... who is or may become eligible to receive a benefit...." 29 U.S.C. § 1002(7). The Supreme Court has construed this definition to cover "either employees in, or reasonably expected to be in, currently covered employment, or former employees who have ... a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Firestone*, 489 U.S. at 117–18, 109 S.Ct. at 958 (citations and internal quotation marks omitted). Because Panaras is neither currently employed by LCI nor reasonably expected to be so employed in the future, his claim must rest on "a colorable claim to vested benefits."

The requirement of a colorable claim is not a stringent one. This circuit has noted that "jurisdiction depends on an arguable claim, not on success" and that only if "any claim ... must be frivolous is jurisdiction lacking." *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir.1991). *See also Sladek v. Bell System Management Pension Plan*, 880 F.2d 972, 976–79 (7th Cir.1989) ("Given the fact that a claimant need only have a 'colorable claim' that he might prevail, we believe that the most useful weapon in weeding out frivolous claims is not Rule 12(b)(1) [lack of subject matter jurisdiction] but Rule 12(b)(6).") A claim such as Panaras' which is based on violations of ERISA's disclosure requirements for a welfare benefit plan is clearly "rooted in existing ERISA law." *Andre v. Salem Technical Servs.*, 797 F.Supp. 1416, 1421 (N.D.Ill.1992). Indeed, courts have not infrequently dealt with similar claims involving severance benefits. *See, e.g., Arnold v. Babcock & Wilcox Co.*, 123 Ill.2d 67, 121 Ill.Dec. 253, 525 N.E.2d 59 (1988); *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir.1990); *Howe v. Varity Corp.*, 36 F.3d 746 (8th Cir.1994), *cert. granted*, —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155 (3d Cir.1990); *Kreutzer; Veilleux; Young.*

Panaras' claim is not frivolous. He argues that he is entitled to severance benefits, in spite of his refusal to sign the release form, because the severance plan was modified without properly notifying him of the change so that he could adapt his financial planning accordingly. This legal theory is "not so bizarre or so out of line with existing precedent—that he necessarily stumbles over the low threshold of the 'colorable' requirement." *Andre*, 797 F.Supp. at 1421. In this respect Panaras differs entirely from the plaintiffs in *Sallee v. Rexnord Corp.*, 985 F.2d 927 (7th Cir.1993). There the plaintiffs sued for severance benefits in spite of the fact that they had voluntarily quit their employment during a corporate reorganization in order to commence other employment. We ruled in that case that the plaintiffs had no colorable claim to severance benefits for the simple reason that they had left their employment voluntarily. As we noted there, their actions were contrary to the very purpose of a severance plan which "offers a carrot for departing at the employer's convenience" and is "a form of compensation for forgoing other employment opportunities." *Id.* at 929. Here, in contrast, Panaras complains of the way in which his employer administered the plan which it had provided to cover the involuntary termination which he in fact suffered. This type of claim is colorable under ERISA.[3]

The more difficult issue in Panaras' case, and the grounds on which the district court denied standing, is the requirement that a "participant" have a colorable claim to "vested benefits." *Firestone*, 489 U.S. at 117, 109 S.Ct. at 958. LCI urges, and the court below found, that Panaras lacks standing because "the plaintiff's interest in the defendants' severance plan did not vest until the plaintiff signed a release." Dist.Ct.Mem.Op. at 6–7, 1995 WL 117967.

---

3. This case is also distinguishable from *Shawley v. Bethlehem Steel Corp.*, 989 F.2d 652, 656–57 (3d Cir.1993), also relied upon by LCI. In that case, the action was dismissed essentially on grounds of ripeness, because "plaintiffs' claim is contingent on the future termination of the Plan and is legally unenforceable ... until such termination." Here there are no future events which could affect Panaras' eligibility for benefits. His claim is that he is eligible for benefits now as a consequence of LCI's past ERISA violations.

We disagree. As pointed out by Judge Shadur in his well-reasoned analysis in *Andre,* an overly technical and narrow reading of the Supreme Court's reference to "vested benefits" would lead to the result that "no former employee could bring an ERISA claim for welfare benefits allegedly accrued during employment." 797 F.Supp. at 1422. We do not think either the Supreme Court or Congress intended such a result. The discussion of "colorable claim to vested benefits" in *Firestone* arises during the Court's explication of the statutory grant of standing to those former employees who "may become eligible" for benefits. In the same paragraph the Court stated that "in order to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone,* 489 U.S. at 117–18, 109 S.Ct. at 958. This language suggests not the narrow, technical reading of the phrase "vested benefits" adopted by the district court, but a more expansive interpretation. Under such an interpretation, standing is available to any former employee who has a colorable claim to benefits which the employer promised to provide pursuant to the employment relationship and which a non-frivolous argument suggests have accrued to the employee's benefit. *Accord, Willett v. Blue Cross & Blue Shield,* 953 F.2d 1335, 1342–43 (11th Cir.1992) (plaintiff was "participant" because he "anticipated receiving plan benefits and was entitled to prompt notice of any disruption in the commencement of his anticipated plan benefits"). *See also Vartanian v. Monsanto Co.,* 14 F.3d 697, 703 (1st Cir.1994) (plaintiff who "would have been entitled to greater benefits but for employer's breach of fiduciary duty was participant for standing purposes"); *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1221 (5th Cir.) ("employer should not be able through its own malfeasance to defeat the employee's standing"), *cert. denied,* 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992).

LCI had promised to provide severance benefits to its involuntarily terminated employees. Panaras was involuntarily terminated and now alleges that LCI's failure to notify him of changes in the plan's provisions prejudiced him to the extent that he should receive the benefit of the old plan upon which he relied in continuing his employment. Panaras thus presents a non-frivolous contention that severance benefits should have accrued to him upon his termination and that the ERISA violations of his employer excuse his refusal to sign the release form. This claim is sufficient to qualify Panaras as a participant for purposes of § 1132(a) standing.

### III. Exceptional Circumstances

Despite our finding that Panaras possessed standing to pursue his ERISA claim, we uphold the district court's dismissal of his complaint. Dismissal under Fed. R.Civ.P. 12(b)(6) for failure to state a claim is appropriate only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago,* 3 F.3d 1156, 1159 (7th Cir.1993). We read a complaint liberally and "accept as true the well pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations." *Palda v. General Dynamics Corp.,* 47 F.3d 872, 874 (7th Cir. 1995).

Panaras has sufficiently alleged that LCI violated ERISA's disclosure requirements. Paras. 13, 14 of Plaintiff's Complaint. However, as noted, a claim for monetary benefits in a suit based on technical violations of the notice provisions will be awarded only in "exceptional circumstances" involving bad faith, intentional concealment or prejudice to the employee. *Kreutzer,* 951 F.2d at 743. Matters such as bad faith, concealment and prejudice require, for the most part, a highly fact-specific inquiry. It will perhaps be a rare case in which a plaintiff's allegations of exceptional circumstances surrounding an employer's violations of the ERISA disclosure requirements will be appropriately resolved on a Rule 12(b)(6) motion.[4] However,

---

4. We note in this regard that nearly all of the ERISA cases cited by the defendants in support

of either their standing argument or their claim of failure to allege prejudice are, in fact, cases

we believe that in this instance the dismissal was justified because "a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Palda*, 47 F.3d at 875.

■ While federal notice-pleading allows for a generous reading of a complaint, in order to resist a motion to dismiss, the complaint must at least set out facts sufficient to "outline or adumbrate" the basis of the claim. The pleader "will not be allowed to evade this requirement by attaching a bare legal conclusion to the facts that he narrates ..." *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir.1984). While Panaras alleges that each of the three potential bases for "exceptional circumstances" propounded by *Kreutzer* are present, he fails to support any of these legal conclusions with appropriate factual representations.

■ Panaras' allegation of bad faith is entirely conclusory and is supported by no factual allegations whatever. In paragraph 17 of Panaras' Complaint he states:

> Conversely, it was in the best interests of Defendants to conceal from Plaintiff the requirement that he waive all said rights so that Plaintiff would not adequately prepare to meet the financial exigencies of unemployment and, therefore, be more easily induced to waive all of such rights in return for such severance benefits. Such conduct constitutes bad faith on the part of Defendants, and each of them.

This paragraph contends only that, because LCI hypothetically could have benefited by its failure to inform Panaras of the modification of the severance provisions, this failure must have been in bad faith. Such bare speculation is available in nearly every circumstance in which an employer both downgrades its employee benefits and fails to comply with the ERISA notice provisions. It is not, however, adequate to state an ERISA cause of action. Paragraph 17 contains neither "direct allegations on every material point necessary to sustain a recovery" nor "allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Sutliff*, 727 F.2d at 654.

Similarly, Panaras' allegations of intentional concealment consist entirely of paragraph 12 of the Complaint, which reads:

> Defendants, and each of them, actively and intentionally concealed the aforesaid requirements of its Severance Plan, and any revisions thereto, until such time as Plaintiff was terminated. Plaintiff was not notified where he could find copies of Defendants' Severance Plan until months after his termination and, in fact, Defendants, and each of them, have continued to attempt to conceal such information from similarly situated persons, current employees and others.

Here again, the accusation of intentional concealment rests on thin air. No facts whatsoever are alleged. Further, the allegation of continuing attempts to conceal "such information" fails to meet even the most liberal conceivable standard of notice pleading. Defendants could not possibly prepare an effective response to a complaint which does not even go so far as to inform them what information they have purportedly concealed from whom.

Finally, we reach Panaras' allegation of prejudice. This point requires more extensive discussion. Although we agree with the district court that Panaras has failed to ade-

---

which were decided on summary judgment, rather than on motions to dismiss. The only cited cases which were decided on motions to dismiss were either decided in favor of the employee or are distinguishable from the present case. *Adamson v. Armco, Inc.*, 44 F.3d 650 (8th Cir.) (dismissed for failure to comply with the statute of limitations), *cert. denied*, — U.S. —, 116 S.Ct. 85, 133 L.Ed.2d 42 (1995); *Astor v. International Business Machines Corp.*, 7 F.3d 533 (6th Cir.1993) (finding employees had standing but granting judgment on the pleadings based on the parol evidence rule); *Lister v. Stark*, 890 F.2d 941 (7th Cir.1989) (dismissing because ERISA does not recognize oral modifications to pension plan), *cert. denied*, 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990); *Sallee v. Rexnord Corp.*, 985 F.2d 927 (7th Cir.1993) (no standing under severance plan where employees voluntarily terminated employment); *Shawley v. Bethlehem Steel Corp.*, 989 F.2d 652 (3d Cir.1993) (dismissing for lack of standing where claim was contingent on future termination of the benefit plan); *Sladek v. Bell System Management Pension Plan*, 880 F.2d 972 (7th Cir.1989) (finding standing and reversing dismissal).

quately allege the prejudice necessary to survive a Rule 12(b)(6) motion, we believe that the district court's analysis of the prejudice issue was too narrow. That court's analysis too closely cabined the potential for prejudice, which might, in other cases, result when employers violate the notification provisions of ERISA with respect to welfare benefit plans.

With respect to prejudice, the Complaint suggests only that:

> Plaintiff would have made other financial arrangements to cover any periods of unemployment following his termination from Defendant[s] if Plaintiff knew that he would not receive benefits under Defendants' Severance Plan unless he released all of his employment rights, including rights arising out of his termination due to age or other discriminatory reasons.

Defendants press upon us, and the court below apparently accepted, the contention that, because LCI reserved the right to modify its severance benefits at any time, no prejudice could possibly have resulted from a failure to learn of the changes in the plan's provisions in advance. Def.Br. at 21–22; Mem.Op. at 7 ("Since the plaintiff admits that, after learning of the condition, he was given ample time to sign the release and thereby qualify for benefits, the defendants' alleged failure to inform him of the condition at an earlier time caused no prejudice to the plaintiff.") Given such an interpretation of the prejudice requirement, no violation of the notice requirement involving a severance plan could ever give rise to a cognizable legal claim. We decline to go this far.

It is true that LCI's old severance plan clearly reserved a right to modify, or even terminate the plan. It stated:

> The severance benefits described hereunder are revocable or otherwise subject to change or alteration at the discretion of appropriate company representatives without prior notice to affected employees. Nothing in this bulletin should be interpreted or construed to establish or be part of any expressed, implied, written or oral contract of employment.
>
> Ex.A, Def.Mem. in Support of Motion to Dismiss.

The fact that a benefit plan might be terminated at the employer's whim, however, does not inevitably imply that employees are not harmed if they are not informed that the benefit program has been eliminated or downgraded. While they may not be guaranteed any particular welfare benefits, employees depend on ERISA for assurance that they will at least know what their benefits are so that they can plan accordingly. Employees often rely, at least in part, on the menu of welfare benefits offered by an employer in choosing one offered job over another or in deciding whether to remain with a current employer or to seek employment elsewhere. Even though employers retain the power to alter these benefit plans whenever it suits them, workers necessarily base their decisions on the best information available to them and allocate their financial resources in light of their best estimates of their needs. Employees who are currently covered by a medical, severance or other welfare benefit plan may quite rationally make different financial decisions than those who are not. This is true even if these employees are aware that the benefits could be taken away by their employers.

To this end, the procedural requirements of ERISA are intended to "alter the very balance of knowledge and rights between covered employees and their employer." *Blau,* 748 F.2d at 1353. While violations of these provisions do not infringe on any right to benefits per se, they may substantially curtail employees' access to information. At some level of egregiousness, breaches of the notice requirements "alter the substantive relationship between employer and employee that disclosure, reporting and fiduciary duties sought to balance somewhat more equally." *Id.* at 1354.

The harm induced when employees rely on their employers' misrepresentations is perhaps most obviously apparent in the case of benefits, such as medical coverage, which the employee uses on an ongoing basis during employment. An employee might undergo medical treatment assuming that it would be covered by a benefit plan or forego buying alternative medical insurance. Generically, the prejudice suffered in such a case—inabili-

ty to plan properly for medical contingencies—is entirely analogous to the type of prejudice alleged by Panaras in this case—inability to plan properly for the possibility of unemployment. That procedural violations with respect to severance benefits can have actionable prejudicial effects, has, accordingly, been recognized by other courts of appeals. *See, e.g., Blau; Heidgerd.*

Thus, we do not find, as Defendants would urge us to do, that the type of prejudice alleged by Panaras is generically insufficient to support an ERISA claim. However, in the case before us, we must conclude that Panaras' Complaint fails here, as it does elsewhere, to inform the court or the Defendants what harm *he specifically* has suffered as a result of LCI's ERISA violations.

We assume, for purposes of a motion to dismiss, that plaintiff's allegation that LCI has violated the notification provisions of ERISA is correct. ERISA requires initial disclosure of welfare benefits to participants within 120 days after the plan becomes subject to the notification requirement. 29 U.S.C. § 1024(b)(1)(B). Once the initial disclosure is made, participants must be notified of modifications to the plan "not later than 210 days after the end of the plan year in which the change is adopted." *Id.* According to Panaras' Complaint, the provision conditioning a grant of severance pay on signing of a release was enacted on or about February 1, 1994. His employment was terminated on July 28, 1994. Even under the generous assumption that the enactment of the release provision constituted the promulgation of a new plan, LCI had 120 days within which to provide summary plan descriptions to its employees. Thus, there was no requirement that Panaras be notified before approximately June 1, 1994.

It is difficult to imagine, and Panaras gives us no factual clues to enlighten us with respect to, what changes in financial or employment plans Panaras might have made in the brief period between June 1 and July 28. The mere allegation that he "would have made other financial arrangements" is not sufficient, under these particular circumstances, to resist a motion to dismiss under Rule 12(b)(6). We thus affirm the district court's dismissal of the ERISA count of Panaras' Complaint.

### Breach of Contract Claim

The grounds for Panaras' breach of contract claim are a bit obscure. In his Complaint he alleges that

> the implementation of the severance plan constituted a new offer of continued employment made by Defendants to Plaintiff, which offer Plaintiff accepted by continuing to work for Defendants in return for, *inter alia*, severance payments without preconditions in the event that Plaintiff should lose his job through no fault of his own.

Complaint, Para. 21.

The suggestion that the severance plan formed any part of the employment contract, however, is belied by the clear terms of the severance plan itself, which states that it should not be "interpreted or construed to establish or be part of any expressed, implied, written or oral contract of employment." In fact, even Panaras seems to have retreated from this allegation, stating in his brief to this court that, although "the District Court apparently considered Plaintiff's contract claim as being one for severance payments pursuant to a contract providing for such payments," this was not what he *actually* claimed. Appellant's Br. at 21. Given the wording of paragraph 21 of the Complaint, it is difficult to see how the district court could have interpreted the allegation in any other way.

In any event, at this juncture Panaras appears to focus on the allegation contained in paragraph 23 of his Complaint:

> Defendants' conduct in unilaterally and secretly amending the Severance Plan, concealing such purported amendments, and refusing to pay benefits to Plaintiff under such Severance Plan, constitutes a breach by Defendants, and each of them, of the covenant of good faith and fair dealing, which covenant was an implied condition of Plaintiff's continued employment with Defendants.

Complaint at Para. 23.

Panaras further explains his claim as one "that Defendants breached their duties under ERISA, namely, the notice and disclosure violations, which duties were an implied term

of Plaintiff's contract of employment." Appellant's Br. at 21.

The contention seems to be that a breach of ERISA is also a breach of contract because ERISA is part of the context in which any employment contract is negotiated. This contention, however, is clearly untenable, given the fact that, in general, "ERISA preempts all state law claims for severance benefits." *Kreutzer*, 951 F.2d at 743. The complete lack of merit in this type of claim is even clearer given this court's recent decision in *Rice v. Panchal*, 65 F.3d 637 (7th Cir.1995). There the court held that complete preemption of state law claims "is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Id.* at 644. Panaras advances the archetype of such a claim here, since the entire gravamen of his allegation is that LCI violated ERISA. Thus Panaras' state law claims are clearly preempted by ERISA.

The district court's dismissal of both the ERISA and the breach of contract counts in Panaras' Complaint is therefore

AFFIRMED.