Michael MORIARITY, Plaintiff,

v.

UNITED TECHNOLOGIES CORPORATION REPRESENTED EMPLOYEES RETIREMENT PLAN, Defendant.

Civil No. 3:95cv2578 (PCD).

United States District Court,
D. Connecticut.

Nov. 20, 1996.

Joseph D. Farrell, Benefits Litigation Concepts, Marlborough, CT, for Plaintiff.

Theodore J. Tucci, Jean Elizabeth Tomasco, Robinson & Cole, Hartford, CT, for Defendant.

### RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DORSEY, Chief Judge.

Plaintiff Michael Moriarity, relying on the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), seeks a determination of his right to recover benefits allegedly due to him under Defendant United Technologies Corporation Represented Employees Retirement Plan ("Plan"). Plaintiff and Defendant filed cross-motions for summary judgment. For the following reasons, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

### I. BACKGROUND FACTS

The material facts in this case are undisputed. Plaintiff commenced employment with United Technologies Corporation—Hamilton Standard Division ("UTC") on September 9, 1968. Stipulation of Facts ("Stip.") ¶ 1. Plaintiff terminated that employment on September 19, 1989, (*Id.*), allegedly due to physical and psychological dis-

ability. Complaint ¶ 5.[1] While employed by UTC Plaintiff became eligible to participate in the Plan[2]. Stip. ¶ 2. As of his termination he had earned a monthly pension benefit under the Plan in the amount of $896.87, payable at his normal retirement date of May 1, 2012. *Id.* It is a vested, non-forfeitable and accrued benefit under the terms of the pension plan. *Id.* After leaving UTC's employment Plaintiff alleges that he attempted to "continue working in a less demanding and stressful environment" but was unsuccessful due to his disability. Complaint ¶ 6.

On March 9, 1992, Plaintiff applied for Social Security disability benefits and was determined to be disabled as of that date. Plaintiff's Statement of Material Facts ("Pl.Statem.") ¶ 8. Plaintiff began receiving Social Security benefits on October 1, 1992. Complaint ¶ 7. In late 1994, Plaintiff contacted Defendant for information about disability benefits under the Plan. By letter dated November 3, 1994, Defendant informed Plaintiff that he did not qualify for disability benefits because his employment with UTC terminated before he became disabled as determined by the Social Security Administration. Defendant's Appendix to Motion for Summary Judgment ("Appen."), Ex. 2. Plaintiff was also informed that he had fulfilled the eligibility requirements for a vested pension benefit to be paid in the future and the amount of that benefit. *Id.*

Plaintiff presented his claim to Defendant's Benefit Claims Appeal Committee (the "Committee"), which on February 7 1995,

unanimously denied his claim on the basis that his disability date was subsequent to termination of his employment with UTC and, therefore, he was not entitled to disability benefits under the terms of the Plan. Affidavit of Ellen McGroary ("McGroary Aff.") ¶ 12. Defendant informed Plaintiff of the Committee's decision by letter dated March 8, 1995. Appen., Ex. 5. Plaintiff instituted the instant action under ERISA seeking disability benefits and a determination of his benefits under the Plan.

### A. *The Plan*

The Plan is an "employee benefit plan,"[3] which provides both retirement benefits and ancillary benefits[4] to participants and is governed by ERISA, 29 U.S.C. § 1001 *et seq.* The Plan defines a "Participant" as "any Employee who has become a Participant in the Plan in accordance with Article Four." Plan § 2.27, p. 10. Article Four provides that employees automatically become a Participant upon the first of the following: 1) the completion of one year of eligibility service and attaining age 25; or 2) completing 5 years of eligibility service. Plan § 4.2(a), p. 22. Further, a participant ceases to be such on the date on which he ceases to be an employee of the employer. Plan § 4.6, p. 24. As required by ERISA, however, Article Eight provides for vesting of retirement annuities. Plan § 8.1, p. 43.[5]

Under the Plan, disability benefits are available to a Participant who has completed 10 years of continuous service and has been

---

1. It is unclear from the papers submitted whether Plaintiff voluntarily terminated his employment.

2. Plaintiff alleges that Defendant improperly amended the 1978 version of the Plan in violation of 29 U.S.C. 1054(g), which prohibits the reduction of an accrued benefit by an amendment. ·Complaint ¶¶ 27–28. Disability benefits are employee welfare benefits, 29 U.S.C. § 1002(1), which are not subject to ERISA's vesting and accrual provisions. *Schonholz v. Long Isl. Jewish Med. Center,* 87 F.3d 72, 77 (2nd Cir.1996) (citation omitted); *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 491 (2nd Cir. 1988). "[A]n employer has the right to terminate or unilaterally to amend the plan at any time." *Schonholz,* 87 F.3d at 77 (citation omitted). Accordingly, ERISA's prohibition against eliminating or reducing an "accrued benefit" generally

does not apply to disability benefits. *Williams v. Plumbers & Steamfitters Local 60,* 48 F.3d 923, 925 (5th Cir.1995) (citing *Harms v. Cavenham Forest Indus.,* 984 F.2d 686, 691 n. 6 (5th Cir. 1993), *cert. denied,* 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 331 (1993)). Nonetheless, for purposes of the present motions, and as agreed to by Defendant, the Court will apply the provisions of the 1978 Plan.

3. 29 U.S.C. § 1002(3).

4. Ancillary benefits are employee welfare benefits, which include health, disability and death benefits. 29 U.S.C. § 1002(1).

5. ERISA mandates that employees who meet certain requirements become entitled to a fixed and irrevocable pension benefit. 29 U.S.C. § 1053.

determined to be disabled under the Social Security Act. Plan § 6.1(a), p. 36. Once eligible, disability benefits under the Plan continue until the first of the following occur: 1) Social Security benefits cease; 2) the Participant begins receiving Retirement Annuity payments; 3) the Participant retires at the normal retirement date; or 4) the Participant dies. Plan § 6.2(a), pp. 36–37. The amount of the disability benefit is calculated in the same manner as the Participant's pension benefit. Plan § 6.2(b), p. 37.

### B. *The Summary Plan Description*

Plaintiff alleges, and Defendant does not dispute, that he was never provided with a copy of the Plan. Affidavit of Michael Moriarity ("Moriarity Aff.") ¶ 5. However, as required by ERISA[6] a Summary Plan Description ("SPD") was distributed to employees. Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("Def.'s Statem.") ¶ 32. The introduction to the SPD describes the purpose of the booklet as to explain the retirement income that a Participant is entitled to receive under the Plan. The SPD prov' 'es that "[a]s an employee of the company, you *automatically* become a participant in the plan ... after you have ... completed one year of eligibility service and reached age 21, or completed five years of eligibility service regardless of age." SPD, p. 4 (emphasis in original). The SPD summarizes the various retirement, death and disability benefits available under the Plan, as well as payment methods for the various benefits. With respect to disability benefits, the SPD provides: "If you become permanently and totally disabled, you will be eligible for a disability pension if you ... have at least 10 years of continuous service, and receive Social Security disability benefits." SPD, p. 10. Like the Plan, the SPD also provides that disability benefits cease when Social Security benefits stop, normal, early or vested benefits begin, normal retirement occurs or the disabled individual dies, whichever is earliest. SPD, p. 10.

Unlike the Plan, the SPD does not include a definition of Participant, and, therefore, the SPD does not contain the language in Article 4 of the Plan that "[a]n Employee who has become a Participant in the Plan shall cease to be a Participant on ... [t]he date on which he ceases to be an employee...." The SPD does set forth the benefits an employee who leaves the company prior to retirement is entitled to in a section entitled "VESTED BENEFITS." SPD, p. 10. That section provides that an employee who leaves the company before retirement, but after 5 years of continuous service, is "vested" with respect to retirement and certain death benefits, which means they "are entitled—beginning at [their] normal retirement date—to income from the Plan based on the full benefits [they] earned up to the time [they] left the company." SPD, p. 10.

## II. DISCUSSION

### A. *Standard for Summary Judgment*

Summary judgment shall be granted when "the pleadings, depositions ... and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). " 'Properly employed summary judgment allows the court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial.' " *Diamantopulos v. Brookside Corp.*, 683 F.Supp. 322, 325 (D.Conn.1988) (citing *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57–58 (2nd Cir. 1987)). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. A factual issue is "material" if it "might affect the outcome of the suit under the governing law...." *Id.*

Once the movant has satisfied its burden, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250, 106 S.Ct. at 2511. The non-movant may not merely

---

**6.** 29 U.S.C. §§ 1022(a)(1), 1024(b).

rest on the allegations and denials in the pleadings but must establish, via affidavits, depositions, answers to interrogatories and admissions on file, a genuine issue of material fact exists. *Id.* at 248, 106 S.Ct. at 2510. In considering a motion for summary judgment all reasonable inferences must be drawn in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14. Summary judgment is particularly appropriate where a court is called upon to interpret the law governing construction and effect of unambiguous contract terms.[7]

### B. *Standing*

Defendant challenges Plaintiff's standing under ERISA to bring this action. Only a "participant" or "beneficiary" may bring a civil action under ERISA. 29 U.S.C. § 1132(a). A "participant" is "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer. . . ." 29 U.S.C. § 1002(7). The statutory definition of "participant" has been further clarified, albeit not in the context of standing:

> [T]he term 'participant' is naturally read to mean either 'employees in, or reasonably expected to be in, currently covered employment,' or former employees who 'have . . . a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits. In order to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. This view attributes conventional meanings to the statutory language since all employees in covered employment

and former employees with a colorable claim to vested benefits "may become eligible." A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit with the [phrase] "may become eligible." '

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117–18, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989) (citing *Saladino v. I.L.G.W.U. National Retirement Fund,* 754 F.2d 473, 476 (2nd Cir.1985)) (internal citations omitted).[8] Exceptions to *Firestone* have been carved out and the circuit courts have split on various standing issues leaving the standing dilemma far from resolved.[9]

Defendant argues that since employee welfare benefits do not vest under ERISA Plaintiff is not a "participant" with standing to challenge the Committee's denial of disability benefits, as that term was defined by the Supreme Court in *Firestone.* Defendant fails to recognize that although employee welfare benefits do not automatically vest under ERISA, they may contractually vest under the terms of the plan documents. *Schonholz,* 87 F.3d at 77–78; *Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 937 (5th Cir.1993), *cert. denied,* 510 U.S. 870, 114 S.Ct. 196, 126 L.Ed.2d 154 (1993).[10] "[I]t is settled law that an employer and an employee may contract for post-employment welfare benefits." *Sprague v. General Motors Corp.,* 92 F.3d 1425, 1434 (6th Cir.1996) (citation omitted). Even under a literal application of *Firestone,* so long as a Plaintiff makes a colorable claim that his disability benefits have vested, he has standing to sue.

**7.** Plaintiff does not allege that any terms contained in the SPD are ambiguous, *i.e.* susceptible to more than one meaning, but instead, argues that the SPD is misleading and insufficient under 29 U.S.C. § 1022 because it does not contain enough information regarding his benefits under the Plan.

**8.** In *Firestone,* the Supreme Court clarified the statutory definition of "participant" in the context of whether a former employee was a "participant" entitled to plan information under ERISA, 29 U.S.C. § 1024(b)(4).

**9.** *See e.g. Mullins v. Pfizer, Inc.,* 23 F.3d 663, 667 (2nd Cir.1994); ERISA Litigation Reporter, *The Circuit Courts Grapple with the 'Participant' Concept* (August 1995).

**10.** However, "[s]uch extra-ERISA commitments must be found in the plan documents and must be stated in clear and express language." *Wise,* 986 F.2d at 937.

More importantly, however, *Firestone* did not define "participant" in the context of standing, and federal courts have been hesitant to apply that decision as narrowly as advocated by Defendant.[11] "*Firestone* should not be read to 'reduce the standing question to a straightforward formula applicable in all cases.'" *Swinney v. General Motors Corp.*, 46 F.3d 512, 518 (6th Cir.1995) (citing *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1221 (5th Cir.), *cert. denied*, 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992)). "[A]n overly technical and narrow reading of the Supreme Court's reference to 'vested benefits' would lead to the result that 'no former employee could bring an ERISA claim for welfare benefits allegedly accrued during employment.'" *Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 791 (7th Cir.1996) (citation omitted). *Accord: Andre v. Salem Technical Services*, 797 F.Supp. 1416, 1422–23 (N.D.Ill.1992). Instead, "standing is available to any former employee who has a colorable claim to benefits which the employer promised to provide pursuant to the employment relationship and which a non-frivolous argument suggests have accrued to the employees benefit." *Panaras*, 74 F.3d at 791.

"The requirement of a colorable claim is not a stringent one." *Panaras*, 74 F.3d at 790. So long as the claim is not frivolous and is rooted in existing law it is colorable. *Id.* Although the Second Circuit has not decided the precise issue here presented, in ruling that former employees who voluntarily retired based on misrepresentations by plan administrators had standing to sue for severance benefits, the Second Circuit held: "[T]he basic standing issue is whether the plaintiff is 'within the zone of interests ERISA was intended to protect.'" *Mullins*, 23 F.3d at 668 (citation omitted). *Accord: Astor v. International Business Machines Corp.*, 7 F.3d 533, 538 (6th Cir.1993) (standing turns on whether a plaintiff has "a sufficient personal stake in the outcome of a justiciable controversy to obtain a judicial resolution of their dispute . . .").[12]

One interest that ERISA seeks to protect is "disclosure and reporting to participants and beneficiaries" regarding their employee benefit plans. 29 U.S.C. § 1001(b). In furtherance of that goal, employee welfare benefit plans, like pension plans, are subject to ERISA's disclosure requirements, including 29 U.S.C. § 1022. Title 29 U.S.C. § 1022 requires plan administrators to provide covered employees with an SPD "written in a manner calculated to be understood by the average plan participant and [ ] sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of

11. Defendant's constrained interpretation of the Supreme Court's reference to "vested" would also frustrate Congress' purpose in enacting ERISA. Congress intended ERISA " 'to provide a full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due participants.'" *Mullins*, 23 F.3d at 668 (citing S.Rep. No. 127, 93d Cong., 2d Sess. (1974) U.S.Code Cong. & Admin.News 1974 at p. 4838). Since ERISA preempts state law claims that relate to an ERISA plan, *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 138–39, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990), it "would clearly frustrate Congress' intent 'to remove jurisdictional and procedural obstacles' if we held that ERISA preempts the Plaintiffs' claims and yet denies them standing to pursue a federal claim." *Swinney v. General Motors Corp.*, 46 F.3d 512, 519 (6th Cir.1995) (citation omitted). ERISA should not be applied to afford less protection to employees than existed prior to its enactment. *See*

*Mullins v. Pfizer, Inc.*, 899 F.Supp. 69, 75 (D.Conn.1995), *aff'd in part, rev'd in part*, 23 F.3d 663 (2nd Cir.1994). The interpretation of "participant" advanced by Defendant would effectively deny Plaintiff any recourse—Plaintiff would not have standing to sue under ERISA, yet he arguably could not bring a state law claim since his claims relate to an ERISA plan. Such a result would clearly frustrate Congress' purpose in enacting ERISA.

12. It is undisputed that Plaintiff is entitled to a vested pension benefit. Stip. ¶ 2. Plaintiff argues that his entitlement to a vested pension benefit makes him a participant for standing purposes to challenge a denial of any type of benefit under the Plan. Neither Plaintiff nor Defendant has cited any authority on this issue. The language "is or may become eligible to receive a benefit of any type," contained in 29 U.S.C. § 1002(7), arguably supports Plaintiff's position. Although Plaintiff's argument is a novel one, since Plaintiff has a colorable claim to disability benefits he has standing under ERISA and this issue need not be resolved.

their rights and obligations under the plan." The SPD must also apprise participants of the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits...." 29 U.S.C. § 1022(b).

■ Plaintiff alleges that the SPD distributed to employees is misleading and conflicts with the Plan because it does not contain the definition of "Participant" included in Article 4 of the Plan—that an employee ceases to be a participant when they are no longer employed—and therefore, the SPD did not apprise him of the circumstances that could result in a denial of benefits. As a result of this alleged conflict, Plaintiff argues that the SPD controls his entitlement to disability benefits, and since it does not require that the determination of disability be made while employed, he accrued the right to disability benefits after completing 10 years of continuous service when and if he came to be determined to be disabled by the Social Security Administration—whether that determination is made before or after his employment ceases.

Plaintiff makes a colorable, non-frivolous claim of entitlement to disability benefits, and his claims clearly fall "within the zone of interests ERISA seeks to protect." Accordingly, Plaintiff has standing under ERISA to assert his right to disability benefits.[13]

## C. Denial of Benefits

### 1. Standard of Review

■ *Firestone* set forth the standard for reviewing a denial of benefits under ERISA:

[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

489 U.S. at 115, 109 S.Ct. at 956–57. "Thus, where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.' " *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2nd Cir.1995) (citations omitted). *Accord: Jordan v. Retirement Committee Rensselaer Poly.*, 46 F.3d 1264, 1270–71 (2nd Cir.1995).

■ The Plan and the SPD both grant the Committee discretion to interpret the terms of the Plan. The Plan expressly provides that the Committee shall have the power and duty "[t]o interpret the Plan and to decide any and all matters arising hereunder, including the right to remedy possible ambiguities, inconsistencies or omissions...." Plan § 10.5(b), p. 50. Similarly, the SPD provides: "The committee has the right to interpret the provisions of the plan, so its decision is conclusive and binding." SPD, p. 14. Accordingly, a review of the Committee's denial of disability benefits to Plaintiff will be reviewed under an arbitrary and capricious standard.

■ "Under the arbitrary and capricious standard of review, [a court] may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " *Pagan*, 52 F.3d at 442 (citations omitted). "This scope of review is narrow, [and courts] are not free to substitute [their] own judgment for that of the [ ] Committee as if [the court] were considering the issue of eligibility anew." *Id.* "The arbitrary and capricious standard of review is highly deferential to a plan administrator. The question before a reviewing court under this standard is 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' "

---

**13.** Although Plaintiff's claim for disability benefits is not sustained, Plaintiff has made a colorable and non-frivolous argument for benefits and thus, the Court will not dismiss the suit for lack of standing. *See White v. E & F. Distr. Empl. Pension Plan, Sprgfd. Bk*, 922 F.Supp. 132 n. 4 (C.D.Ill.1996). However, it is not at all certain that the long line of post-*Firestone* cases correctly interpret and apply *Firestone* to standing dis-

putes. Reconciliation of the definition of "Participant" in ERISA, the Supreme Court's holding in *Firestone* and traditional notions of standing has not been achieved. The issue of standing to sue under ERISA requires clarification by the Supreme Court or Congress. Despite reservations, however, to depart from the recent caselaw, and in particular, the Second Circuit's pronouncements, on standing is not warranted.

*Jordan,* 46 F.3d at 1271 (citing *Bowman Transportation Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)). "[T]he lawful, discretionary acts of a pension committee should not be disturbed absent a showing of bad faith or arbitrariness." *Miles v. New York State Teamsters Conference, Etc.,* 698 F.2d 593, 599 (2nd Cir.1983), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983).

### 2. Does the SPD Conflict With the Plan?

The Plan definition of "Participant" clearly provides that an individual ceases to be a "Participant" when he or she ceases to be an employee. Plaintiff does not dispute this fact but instead, argues that since the SPD does not contain this definition of "Participant" it conflicts with the Plan and is misleading regarding the circumstances that would disqualify or render him ineligible for disability benefits. Accordingly, Plaintiff argues that the SPD controls, and under the terms of the SPD he has a right to disability benefits.

ERISA requires employees to distribute a SPD to its employees. 29 U.S.C. §§ 1022(a)(1), 1024(b); *Heidgerd v. Olin Corp.,* 906 F.2d 903, 907 (2nd Cir.1990). "[T]he statute contemplates that the summary will be an employee's primary source of information regarding employment benefits and employees are entitled to rely on the descriptions contained in the summary." *Id.* at 907. *Accord: Hansen v. Continental Ins. Co.,* 940 F.2d 971, 980 (5th Cir.1991) ("ERISA requires that plan participants be provided with an accurate, comprehensive, easy to understand summary of the plan"). " 'It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan....' " *Id.* at 982 (citation omitted). "It would be 'grossly unfair to ... disqualify [an employee] from benefits if ... [the] conditions [which lead to the disqualification] were stated in a misleading or incomprehensible manner in the plan booklets.' " *Id.* (citing

H.R.Rep. No. 93–533, 93d Cong.2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4646). Accordingly, when the SPD conflicts with the terms of the plan, the SPD controls. *Id.* at 980.

In this case, only Participants are entitled to benefits under the Plan. The Plan defines a Participant—the SPD does not. Both the Plan and the SPD provide that disability benefits are available upon 10 years of continuous service and a determination of disability by Social Security. However, the Plan discloses that an employee ceases to a Participant when they cease to be an employee—the SPD does not. As such, the SPD does not apprise employees of the circumstances in which they may be denied benefits.

Defendants argues that the SPD need not restate every term of the Plan. Defendant is correct; however, at a minimum, the SPD must adequately inform employees of their eligibility and ineligibility for benefits. Defendant further argues that the Plan merely clarified, but did not contradict, the SPD. Defendant's position renders the SPD meaningless. "[B]efore a participant in the plan could make any use of the summary she would have to compare the summary to the policy to make sure that the summary was unambiguous, accurate and not in conflict with the policy." *Hansen,* 940 F.2d at 981.[14] The SPD does not inform employees of the "circumstances which may result in disqualification, ineligibility, or loss of benefits," 29 U.S.C. § 1022(b)—one of the primary concerns sought to be remedied by ERISA's disclosure requirements. Accordingly, the SPD is inaccurate and inconsistent with the language of the Plan, and Defendant is estopped to rely on the Plan in denying Plaintiff benefits. *See Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1321 (9th Cir. 1995) (if the SPD "fails to explain the 'circumstances which may result in disqualification, ineligibility, or denial or loss of benefits,' " and "differs materially from the terms of the plan, the SPD is controlling") (citation omitted). Any other result would subvert ERISA's disclosure requirements. The SPD

---

14. Moreover, Plaintiff was not even provided with a copy of the Plan.

controls the determination of Plaintiff's rights under the Plan.

### 3. The Denial of Benefits Was Arbitrary and Capricious

Plaintiff disagrees with the Committee's interpretation of his right to disability benefits under the terms of the SPD. However, as long as the Committee's interpretation was not arbitrary and capricious, the Court may not substitute its own judgment for that of the Committee. *Pagan*, 52 F.3d at 442; *Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1324 (9th Cir.1995). "Where it is necessary for a reviewing court to choose between two competing yet reasonable interpretations of a pension plan, [the] Court must accept that offered by the administrators." *Pagan*, 52 F.3d at 443 (citation omitted). *Accord: Jordan*, 46 F.3d at 1271 ("[t]he court may not upset a reasonable interpretation by the administrator") (citations omitted). "[E]ven if [the plaintiff's] interpretation were as reasonable as the interpretation adopted by the [plan administrator] ... the arbitrary and capricious standard would require us to defer to the interpretation of the Retirement Committee." *Jordan*, 46 F.3d at 1273. "Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." *Miles v. New York State Teamsters Conference, Etc.*, 698 F.2d 593, 601 (2nd Cir. 1983). Even under this highly deferential standard, the Committee's interpretation was arbitrary and capricious.

The SPD provides that "you as an employee" automatically become a Participant in the Plan upon meeting certain eligibility requirements. The SPD further provides that "you" are entitled to disability benefits after completing 10 years of continuous service and upon a determination by the Social Security Administration of disability. The SPD does not provide that the determination of disability must be made while one is employed. The SPD also does not provide that one ceases to be a Participant

and is no longer entitled to benefits after he or she ceases to be an employee. Nowhere does the SPD set forth the circumstances under which an employee who has completed 10 years of continuous service and has been determined to be disabled by Social Security will nevertheless be ineligible for disability benefits. Although the Committee's stated purpose of providing disability benefits to current employees is sensible,[15] employers are obligated under ERISA to provide accurate and comprehensive information to employees. It is the employer, not the employee, who must bear the cost of a poorly drafted SPD.

### 4. Reliance

Even if the SPD was faulty and the Committee's denial of disability benefits was arbitrary and capricious, Plaintiff still is not entitled to recover. "The court is not persuaded ... that deficiencies in the summary plan description are sufficient in themselves to permit the plaintiff to recover his lost disability benefits. Instead, the plaintiff is entitled to recover only if he can establish that he lost his disability benefits as a result of his reliance on the deficiencies in the summary plan description." *Ruotolo v. Sherwin–Williams Co.*, 622 F.Supp. 546, 550 (D.Conn.1985). *See also Aiken v. Policy Management Systems Corp.*, 13 F.3d 138, 141 (4th Cir.1993) (to recover, the plaintiff " 'must show some significant reliance upon, or possible prejudice flowing from, the faulty plan description.' ") (citation omitted). "Most courts that have considered the issue have held that the employer must have acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their employees by inducing their reliance on a faulty plan summary before recovery for procedural violations is warranted." *Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir.1991) (see also cases cited therein).

Plaintiff has not alleged or set forth any evidence that he relied on the alleged faulty SPD to his detriment, i.e., in making his determination or agreeing to end his

---

**15.** *Schwartz v. Newsweek, Inc.*, 827 F.2d 879, 882 (2nd Cir.1987) (in reviewing a denial of benefits one factor to consider is whether the interpretation reflected "sensible concerns").

employment. Plaintiff's disqualification from recovering disability benefits is due to his having ended his employment without affirming his entitlement to disability benefits. Plaintiff's own affidavit proves fatal to his claim—Plaintiff stated that he is not certain if he ever read the alleged faulty SPD. Without having read the SPD, Plaintiff could not have relied on it or been prejudiced or misled by its contents.

## III. *CONCLUSION*

For the foregoing reasons, Plaintiff's motion for summary judgment (Doc. # 14) is hereby DENIED. Defendant's motion for summary judgment (Doc. # 5) is hereby GRANTED.

SO ORDERED.