Nancy Saliba **SOTIROPOULOS**

v.

The **TRAVELERS INDEMNITY CO. OF RHODE ISLAND, now known as the Travelers Indemnity Company of Connecticut.**

**Civil Action No. 95–30049–MAP.**

United States District Court,
D. Massachusetts.

Aug. 1, 1997.

---

Charles R. Casartello, Jr., Pellegrini & Seeley, Springfield, MA, for Nancy Saliba Sotiropoulos.

Joan O. Vorster, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, for Travelers Indem. Co. of R.I.

## MEMORANDUM REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PONSOR, District Judge.

### I. INTRODUCTION

Plaintiff Nancy Saliba Sotiropoulos filed this action under the Employee Retirement Income Security Act ("ERISA") on March 9, 1995. Plaintiff seeks to recover benefits pursuant to a long-term disability policy issued by defendant Travelers Indemnity Company of Rhode Island, now known as Travelers Indemnity Company of Connecticut ("Travelers"), to plaintiff's former employer, Holyoke Hospital.

In response, defendant has filed a motion for summary judgment on the grounds, first, that plaintiff was not a plan participant at the time of the alleged ERISA violation and therefore lacks standing to assert a claim under ERISA and, second, that plaintiff's claims for breach of contract and a violation of Mass. Gen. L. ch. 93A are preempted by ERISA. Plaintiff has stipulated to the dismissal of the breach of contract and Mass. Gen. L. ch. 93A claims, but maintains that she possesses sufficient standing to proceed on her ERISA claim. This memorandum will therefore address the ERISA claim only.

### II. FACTS

In 1987, plaintiff was employed as a phlebotomist by Holyoke Hospital. As an employee of Holyoke Hospital, plaintiff received long-term disability ("LTD") benefits pursuant to an employee group plan issued by defendant Travelers.

In March 1988 plaintiff suffered a low back condition for which she filed a claim for LTD. The policy provides that, to be considered "totally disabled," a claimant must meet the following requirements:

- During the first 27 months of your disability, you must: be unable to perform the normal duties of your regular occupation for any employer and you must at no time engage in any occupation or employment for pay or profit. This must be due to your disability. The Travelers will decide if this is the case.

- After the first 27 months of your disability, you must be completely unable to engage in any occupation or employment for which you are or become qualified. You could be qualified because of your education, training or experience.

All time you spend completing the Qualifying Disability Period will count in the 27 months.

After you have completed the Qualifying Disability Period, for the purposes of this insurance you will continue to be considered Totally Disabled while you are participating in an approved Rehabilitation Program.

Policy No. GA–113106, page 18.

Plaintiff received LTD benefits from March 28, 1988 to September 28, 1992. On March 1, 1990, during the time plaintiff was receiving benefits, Holyoke Hospital terminated her employment. Defendant thereafter terminated plaintiff's benefits effective September 28, 1992 following an independent medical evaluation (IME) that, defendant claimed, established that plaintiff was no longer totally disabled as defined by the policy. Plaintiff retained counsel and on November 2, 1992 appealed the determination. Following a review of plaintiff's claim, defendant agreed to reinstate plaintiff's LTD benefits effective from September 28, 1992 to February 28, 1993.

In addition to reinstating her LTD benefits retroactive to September 28, 1992, defendant agreed to pay LTD benefits to plaintiff while

she participated in a "rehabilitation program" with Life Laboratories at Mercy Hospital. Defendant notified plaintiff, by way of correspondence dated March 25, 1993 and April 27, 1993, that upon completion of her participation in the training program, absent any unforeseen complications, her LTD benefits would cease.

Plaintiff commenced rehabilitative training on April 4, 1993. Her training was completed on approximately July 4, 1993. On July 20, 1993 defendant informed plaintiff that:

> With the successful completion of your trial work period and in accordance with our agreement, our rehabilitation file will now be closed and the supplementary income we had been providing you terminated.
>
> Furthermore, since you are no longer considered totally disabled as defined by the Policy, we are also withdrawing your long-term disability claim, and as stated above, no further benefits are due.

Defendant's Motion for Summary Judgment, Exhibit G.

*Four months later,* in November 1993, plaintiff requested that defendant reinstate her long term disability benefits.

Defendant denied reinstatement of plaintiff's LTD benefits on March 3, 1994. Plaintiff requested a review of the denial determination, in writing, on March 31, 1994. This request was acknowledged by defendant on April 13, 1994. Plaintiff filed further requests for consideration on August 3, 1994 and December 1, 1994. Plaintiff alleges that Travelers has failed to respond to her requests for a review of the denial determination. Plaintiff then proceeded to file this lawsuit.

## III. *DISCUSSION*

Defendant contends that plaintiff is not a plan "participant" within the definition of ERISA [1] and, therefore, lacks standing to bring a claim pursuant to the civil enforcement provision of the statute.[2]

Defendant cites *Firestone Tire & Rubber Co. v. Bruch* to support its assertion that the term "participant" means either "employees in, or reasonably expected to be in, currently covered employment" or former employees who have a "colorable claim to vested benefits." 489 U.S. 101, 117–118, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989). Defendant argues that plaintiff has no standing, and is, therefore, ineligible for benefits, because: (1) she was not employed by Holyoke Hospital when she brought her claim; (2) she is unable to return to covered work, and (3) LTDs are not vested benefits.[3]

The First Circuit, in *Vartanian v. Monsanto Co.,* 14 F.3d 697 (1st Cir.1994), determined that "[t]he Supreme Court's discussion in Firestone of the ERISA term 'participant' was developed outside of the 'standing' context." *Vartanian,* 14 F.3d at 701. In fact, the First Circuit subscribed to the Sixth Circuit's expansive interpretation of ERISA jurisdiction. *Id.* See *Astor v. International Business Machines Corp.,* 7 F.3d 533, 538–539 (6th Cir.1993) (former employees who are within the "zone of interests" ERISA was intended to protect are "participants" for purposes of standing).

The court in *Vartanian* held that a former employee who had retired a month before an enhanced severance package was offered was within ERISA's intended "zone of interest."

---

1. The term "participant" means "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ..." 29 U.S.C. § 1002(7).

2. The civil enforcement provision of ERISA provides that a "civil action may be brought by a participant or a beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

3. In support of its vesting argument defendant cites *Lopez v. Commonwealth Oil Refining Co.,* 833 F.Supp. 86 (D.Puerto Rico 1993); *aff'd, Lopez v. Commonwealth Oil Refining Co., Inc.,* 29 F.3d 619 (1st Cir.1994); *cert. den'd, Lopez v. Commonwealth Oil Refining Co., Inc.,* 513 U.S. 1025, 115 S.Ct. 596, 130 L.Ed.2d 508 (1994); *rehear'g denied, Lopez v. Commonwealth Oil Refining Co., Inc.,* 513 U.S. 1185, 115 S.Ct. 1181, 130 L.Ed.2d 1133 (1995).

*Vartanian,* 14 F.3d at 702–703. The First Circuit stated:

> Vartanian could not technically be a "participant" in the 1991 plan. We believe, however, that given the broad inclusive scope of the ERISA statute, and its preclusion of all other judicial recourse, it would be entirely inconsistent with the ERISA statute for this court to decline to bar Vartanian, for lack of "standing". . . .

*Id.*

In support of its conclusion, the court in *Vartanian* noted the legislative history of ERISA, which indicates that Congress intended the federal courts to construe ERISA's jurisdictional requirements broadly in order to facilitate enforcement of its remedial provisions.

> The intent of the Committee is to provide the full range of legal and equitable remedies available . . . and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants.

*Vartanian,* 14 F.3d at 702; S.Rep. No. 127, 93d Cong., 2d Sess., 3 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4871.

Defendant attempts to distinguish *Vartanian* and *Astor* by claiming that in both these cases the plaintiffs were plan participants when they brought their claims. However, as noted above, there was a very live issue in *Vartanian* as to whether the plaintiff was a "participant" in the Plan he sought to enforce; the First Circuit assumed in its ruling the plaintiff "could not technically be a 'participant' in the 1991 plan." *Id.*, at 702.

For the above reasons, strictly on the issue of standing, the defendant's Motion for Summary Judgment regarding the ERISA claim will be denied.

The court has, however, discovered a potential issue not raised by counsel. Although the court has determined that plaintiff may have been within the "zone of interest" ERISA was intended to protect for purposes of standing, a review of the group policy has revealed that there may be an issue with respect to the timeliness of plaintiff's request for reinstatement of benefits. Phrased as a question, the issue is: did plaintiff's failure to protest her termination until November of 1993 preclude her from obtaining LTDs under the policy?

The policy contains two provisions that appear to be relevant to this issue. The first is the provision entitled "Successive Disabilities After Benefit Payments Start." This provision states, in relevant part:

> If you stop being Totally Disabled, Benefit Payments will stop at that time. However in time you could become Totally Disabled again. If your later disability is due to a cause that is the same as or that is related to the cause of your last disability, you may not have to complete another Qualifying Disability Period to start to get payments again. *If there are 3 months or less between the two times they will be considered the same disability and you will not have to complete another Qualifying Disability Period.* If there are more than 3 months between the two times, they will be considered 2 periods of disability and you will have to complete another Qualifying Disability Period.

Policy No. GA–113106, pages 7–8 (Emphasis supplied).

The second relevant provision is entitled, "How To Appeal A Claim." This provision reads, in relevant part:

> You will be notified in writing by The Travelers if a claim or any part of a claim is denied.
>
> ● If you are not satisfied with the explanation of why the claim was denied you may ask to have your claim reviewed.
>
> You may submit issues and comments in writing.

Policy No. GA–113106, pages 11–12.

This provision does not prescribe a time limit by which to seek review of a denial of benefits. Therefore, a determination of whether plaintiff's November 1993 communication was a request to reinstate her LTDs under the successive disability provision, or simply an appeal of defendant's earlier termination of her benefits, may be relevant to the issue of her entitlement to benefits now.

Since this somewhat complex and subtle issue has not be briefed by counsel for either side, the court will not decide it.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment on the ERISA count with respect to standing will be denied. The state law counts will be dismissed by stipulation.

A separate order will issue.