Alan R. EGGERT and Ralph
Harrison, Plaintiffs,

v.

THE MERRIMAC PAPER COMPANY,
INC. LEVERAGED EMPLOYEE
STOCK OWNERSHIP PLAN AND
TRUST ("the ESOP"), Merrimac Pa-
per Co., Inc., in its corporate capacity
and as sponsor of the ESOP, Gerard J.
Griffin, Jr., Brewster Stetson, James
Moriarty, and John T. Leahy, as they
are or were Administrators and/or
Trustees of the ESOP, Defendants.

No. CIV.A. 03–10048–RBC.[1]

United States District Court,
D. Massachusetts.

March 31, 2004.

---

1. On March 27, 2003, with the parties' con-
sent this case was referred and reassigned to
the undersigned for all purposes, including
trial and the entry of judgment, pursuant to
28 U.S.C. § 636(c).

246

Joan I. Ackerstein, Richard W. Paterniti, Jackson Lewis LLP, Boston, MA, for James Moriarty, Defendant.

Bernard J. Bonn, III, Matthew A. Porter, Dechert LLP, Boston, MA, Robert P. Morris, Robert P. Joy, Morgan, Brown & Joy, Boston, MA, for Gerard J. Griffin, Jr., Defendant.

Michael T. Gass, Christine M. O'Connor, Palmer & Dodge, LLP, Boston, MA, for Brewster Stetson, Defendant.

William R. Grimm, Hinckley, Allen and Snyder, LLP, Boston, MA, for Merrimac Paper Co., Inc., The Merrimac Paper Company, Inc. Leveraged Employee Stock Ownership Plan and Trust (the "Esop"), Defendants.

Jeffrey B. Renton, Gilbert & Renton, Andover, for Alan R. Eggert, Ralph Harrison, Plaintiffs.

Thomas P. Smith, Caffrey & Smith, P.C., Lawrence, for Ralph Harrison, Plaintiff.

**MEMORANDUM AND ORDER ON MOTION OF DEFENDANTS BREWSTER STETSON AND JOHN T. LEAHY TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (# 35), MOTION OF DEFENDANT GERARD J. GRIFFIN, JR. TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (# 38) AND DEFENDANT JAMES MORIARTY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (# 39)**

COLLINGS, United States Magistrate Judge.

## I. Introduction

In their Second Amended Complaint, plaintiffs Alan R. Eggert ("Eggert") and Ralph Harrison ("Harrison") assert four claims against defendants The Merrimac Paper Company, Inc. Leveraged Employee Stock Ownership Plan and Trust (the "ESOP" or the "Plan"), Merrimac Paper Co., Inc. ("MPC" or the "Company"), in its corporate capacity and as sponsor of the ESOP, and Gerard J. Griffin, Jr. ("Griffin"), Brewster Stetson ("Stetson"), James Moriarty ("Moriarty") and John T. Leahy ("Leahy"), as they are or were administrators and/or trustees of the ESOP. In three of the counts the plaintiffs allege sundry violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), while Count IV is a claim for breach of contract against only defendant MPC.

On March 21, 2003, a suggestion of bankruptcy and automatic stay was filed with respect to defendant MPC. (# 29) In lieu of answering the second amended complaint, on April 17, 2003, the individual defendants Stetson, Leahy, Griffin and Moriarty (collectively the "individual defendants") filed motions to dismiss (## 35, 38, 39) together with a single, consolidated memorandum of law in support thereof.

(# 37) Following an extension of time, Eggert and Harrison submitted a joint memorandum in opposition (# 45) together with an affidavit of Eggert (# 46) on May 30 and June 3 respectively. On June 30 the individual defendants filed a reply memorandum (# 50), followed sixteen days later by a sur-reply brief in opposition from the plaintiffs. (# 51) Finally, on September 30, 2003, the plaintiffs filed a Notice of Supplemental Authority in Further Support of Plaintiffs' Opposition to Fiduciary Defendants' Motions to Dismiss (# 58) and in response, the individual defendants filed a Response to Plaintiffs' Notice of Supplemental Authority in Further Support of Plaintiffs' Opposition to Fiduciary Defendants' Motions to Dismiss (# 61). At this juncture, the record on the motions to dismiss is complete and the dispositive motions stand ready for resolution.

## II. The Applicable Standards With Respect to Motions to Dismiss

The individual defendants seek dismissal of the plaintiffs' claims pursuant to Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction and Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim. The Supreme Court's decision in *Conley v. Gibson* provides that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the [non-moving party] can prove no set of facts in support of [their] claims that would entitle [them] to relief." *Conley*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). *See also Gorski v. N.H. Dept. of Corr.*, 290 F.3d 466, 473 (1 Cir., 2002). It is incumbent upon the court to "accept the complaint's allegations as true, including all reasonable inferences in favor of [the non-moving party]." *Kiely v. Raytheon Co.*, 105 F.3d 734, 735 (1 Cir., 1997); *Hogan v. Eastern Enterprises/Boston Gas*, 165 F.Supp.2d 55, 57 (D.Mass., 2001). That general proposition notwithstanding, "bald assertions, ... subjective characterizations, optimistic predications,

or problematic suppositions" need not be credited. *United States v. AVX Corp.*, 962 F.2d 108, 115 (1 Cir., 1992) (internal quotations omitted).

### A. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) is a threshold challenge by one party to the adequacy of one or more claims set forth in another party's complaint. *See Burchill v. Unumprovident Corp.*, 2003 WL 21524730, *1 (D.Me., June 27, 2003). The party filing the 12(b)(6) motion asserts that one or more of the plaintiff's claims must fail because the underlying allegations, even if true, fail "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Accordingly, "[t]he appropriate inquiry on a motion to dismiss is whether, based on the allegations of the complaint, the plaintiffs are entitled to offer evidence in support of their claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Furthermore, in "reviewing a ... motion [to dismiss], a court is generally required to (1) treat all of the non-movant's factual allegations as true and (2) draw all reasonable factual inferences that arise from the allegations and are favorable to the non-movant." *Burchill*, 2002 WL 21524730 at * 1 (citing *Carroll v. Xerox Corp.*, 294 F.3d 231, 241 (1 Cir., 2002)). "If under any theory the complaint is 'sufficient to state a cause of action in accordance with the law, a motion to dismiss the complaint must be denied.'" *Duncan v. Santaniello*, 900 F.Supp. 547, 549 (D.Mass., 1995) (citing *Knight v. Mills*, 836 F.2d 659, 664 (1 Cir., 1987)).

### B. Rule 12(b)(1)

In contrast, when considering a motion to dismiss under Rule 12(b)(1) the Court must be "mindful that the party invoking the jurisdiction of a federal court

carries the burden of proving its existence." *Murphy v. U.S.,* 45 F.3d 520, 522 (1 Cir., 1995). When the moving party facially attacks the sufficiency of the pleading, however, the trial court accepts the allegations in the complaint as true. *See Valentin v. Hospital Bella Vista,* 254 F.3d 358, 362–365 (1 Cir., 2001). As such, the non-moving party essentially enjoys the safeguards similar to those provided in opposing a 12(b)(6) motion. See *id.* However, when the moving party factually attacks the complaint, the allegations have no presumptive truthfulness and the Court must weigh the evidence and may consider extrinsic evidence from affidavits and other documents. See *id.* As will be discussed in detail below, for the plaintiffs here to survive a motion to dismiss pursuant to Rule 12(b)(1), they must have standing as either participants, beneficiaries, or fiduciaries under ERISA. See 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), and 1132(a)(3).

## III. Facts

Plaintiffs Eggert and Harrison worked for MPC for twenty-five and thirty-six years respectively, before agreeing to separate from service on different dates in 2000. (# 27 ¶¶ 25, 32). MPC is a duly organized Delaware corporation that has operated paper product-related manufacturing facilities in Lawrence, Holyoke, and Pepperell, Massachusetts. The Company stock is not tradable on any established market; instead, the employees own most of the Company's outstanding shares. (# 27 ¶ 6).

When the plaintiffs separated from MPC, both participated in the ERISA protected ESOP and had attained fully vested interests in their ESOP accounts. (# 27 ¶¶ 25, 32). Both accounts consisted of a substantial quantity of MPC's common stock. (# 27, Exhibit A, § 5.01).

### A. The ESOP

The ESOP became effective on January 1, 1985. (# 27, Exhibit A, ¶ 3). According to the Introduction section of the Plan (# 27, Exhibit A, p. 1):

The primary purpose of the Plan is to enable Participants to acquire stock ownership interest in the Company, therefore, the Trust under the Plan is designed to invest primarily in the Common Stock of the Employer.

The ESOP Plan is designed to be available as a technique of corporate finance for the Company. As such it may be used to meet the general financing requirements of the Company, including capital growth and transfers in the ownership of Company Stock and to receive loans (or other extensions of credit) to finance the acquisition of Company Stock (an "Acquisition Loan").

Allocation of responsibility is not in one person, however. Rather, the Committee, the Company, and the Trustees share responsibility of the Plan as fiduciaries of the ESOP. (# 27, Exhibit A, § 11.01). The Company, however, has sole authority to appoint and remove the Trustees and members of the Committee. See id. Accordingly, the Company designates the Committee, and the Committee then becomes the named Fiduciary having the sole responsibility for the administration of the Plan. See id. Finally, the Trustees are "the named Fiduciaries having the sole responsibility for the administration of the Trust as specifically provided for in the Plan and Trust." Id. According to the ESOP Plan document, "[i]t is intended...that each of the...Fiduciaries shall be responsible for the proper exercise of its own powers, duties, responsibilities and obligations under the Plan...." (Id. at § 11.01(b)).

The Company's Board of Directors "determine[s] the amount of Company Stock,

and/or cash to be contributed to the Trust with respect to such Fiscal Year." (# 27, Exhibit A, § 4.01). The contribution, if any, is then maintained by the ESOP Trustee in "a separate Company Stock Account for each Participant" in addition to other [respective] investment accounts for each participant. (# 27, Exhibit A, § 7.01). "Upon a Participant's Retirement, the Participant shall be entitled to a distribution of his entire Company Stock Account and Other Investments Account as valued in accordance with [the valuation provisions outlined in] Article VII...." (# 27, Exhibit A, § 9.01). However, in order for the retiree to be fully vested in his Company Stock Account and other Investments Accounts the retiree must have reached the age of 65. See id.

If the above prerequisites are met, the Participant is entitled to the payment of benefits:

"[a]ll benefits shall be distributed either in whole shares of Company Stock or cash or in a combination thereof, except that if a Participant requests in writing that his distribution of benefits be made entirely in Company Stock, the Trustee shall make such distribution in Company Stock. In the event of such a request, any balance in a Participant's Other Investments Account shall be applied to acquire for distribution the maximum number of whole shares of Company Stock at their then fair market value. Notwithstanding the foregoing, the value of any fractional shares and cash dividends on Company Stock may be distributed in cash. Prior to the distribution of Company Stock to a Participant, he shall be required to execute a Stock Transfer Agreement granting the Trust and the Company rights of first refusal on the shares of Company Stock to be distributed to him as described in Section 10.03 hereof. The Trustee shall make distributions from the Trust only upon instructions of the Commit-

tee....All benefits shall be payable in a lump sum".

(# 27, Exhibit A, § 10.01).

**B. Plaintiff Eggert**

Eggert separated from his service of employment with MPC in November 2000 after twenty-five years of employment. (# 27 ¶ 32). On December 7, 2000, following the terms of the Plan, Eggert applied for the distribution of his ESOP benefits and in connection with that distribution exercised his right under the ESOP to sell or "put" 850.92 shares of vested common stock back to MPC or the ESOP. (# 27 ¶ 33). As such, Eggert signed the "put" receipt which read:

I understand that under Section 10.01 of The Merrimac Paper Company, Inc., Leveraged Employee Stock Ownership Plan and Trust (the "ESOP"), I may receive a distribution from the ESOP in whole shares of the Common Stock of Merrimac Paper Company, Inc., (the "Company") and that under Section 10.04 of the ESOP I have the right (the "Put") to require the Company or the ESOP to repurchase those shares.

I hereby exercise the Put with respect to 850.92 Shares of the Company's Common Stock distributed to me by the ESOP. I understand that in accordance with Section 10.04(a) of the ESOP, the Company or the ESOP's Trust will, at their election, pay me a lump sum or in five or less equal annual installments for those shares at a closing within (30) days of the date of the Company's receipt of this notice.

(# 27, Exhibit E).

In return, Eggert received a Promissory Note dated December 29, 2000 and signed by Defendant Griffin obligating MPC to pay the sum of $1,555,500.00 with interest on the balance outstanding at a rate of interest of 8.50% per annum. (# 27, Exhib-

it F). The note states, "FOR VALUE RECEIVED, Merrimac Paper Company, Inc., ... promises to pay to Fidelity Investment ... for Mr. Alan Eggert ... the sum of $1,555,500 with interest on the balance outstanding ...." (# 27, Exhibit F). The first installment of $443,317.50 ($311,100 principal, $132,217.50 interest) under the Note was due on December 29, 2001. However, the Note to date has not been paid.

### C. Plaintiff Harrison

Similarly, Harrison separated from his service of employment with MPC in December 1999 after thirty-six years of employment. (# 27, ¶ 25). Harrison's ESOP account balance was valued at $1,116,200.00 at the time he applied for a distribution of his ESOP benefits. (# 27, ¶ 26). In July 2000, following the terms of the Plan, Harrison exercised his put right under the ESOP with respect to the MPC shares allocated to his account, and in return received a promissory note dated July 19, 2000, which promised to pay Harrison $916,300.00 plus interest at the rate of 8.50% per annum in three annual installments. (# 27, Exhibit D). To complete the stock repurchase, Harrison was separately paid $200,000. Of the three annual installments promised, MPC made payment on the first installment but has not paid any other installments to date. (# 27 ¶ 28).

Consequently, the plaintiffs assert that under the terms of the promissory notes, such non-payment constitutes a default, and all principal and interest is now due, plus costs of collection. (# 27 ¶ 41, # 24, Exhibits D & F). As such, Eggert asserts that he "is currently entitled to immediate payment of $1,819,935 plus all 'costs of

collection.'" (# 27 ¶ 38)(emphasis in original). Similarly, Harrison is seeking "all principal and interest now due and owing thereunder, plus costs of collection." (# 27 ¶ 29 & Exhibit D). Accordingly, it appears that Harrison seeks $610,866.00 plus interest and costs of collection since he has received one of the three payments under the terms of the Promissory Note. (# 27 ¶¶ 27–29).[2]

### D. Was the "Put" to the ESOP or the Company?

The plaintiffs sold their stock back to the Company, not the ESOP. Section 10.04 of the Plan plainly gives the ESOP the first choice as to whether or not the buy the stock, providing that "[a]s between the Plan and the Company, the Plan shall have the prior right to purchase shares offered pursuant to the Put." (# 27, Exhibit A). It is also true that on the form which plaintiff Eggert executed in order to exercise the "put", it is stated that he is exercising his right "...to require the Company or the ESOP to repurchase [the] shares." (# 27, Exhibit E).

However, it is absolutely clear from the records that it was the Company and not the ESOP which repurchased the shares. The promissory notes are from the Company, not the ESOP. (# 27, Exhibits. D & F). In addition, the plaintiffs are to be paid in installments. Under Section 10.04(a) of the Plan, the Company, not the ESOP, has the option to pay in installments. There is no equivalent provision for the ESOP to pay in installments if it purchases the stock. Accordingly, the plain fact is that the Company, not the

---

**2.** Harrison originally commenced an action against Defendant MPC in Massachusetts Superior Court (i.e., *Harrison v. Merrimac Paper Co., Inc.*, C.A. No. 02–1687–B (Essex Super. Ct.)) to enforce the contractual obligations under his note, but not any obligation under ERISA. (# 27 ¶ 31). That case, however, has since been removed to this Court (C.A.03–10209–MLW) where it has been stayed due to MPC's bankruptcy.

ESOP, repurchased the stock pursuant to the "put".

### E. Defendants

The individual defendants are named in this case because the plaintiffs allege that each of them are or were at some point in time Plan Fiduciaries as Administrators or Trustees of the ESOP. Specifically, from August 2002 to the present Defendant Leahy has been the ESOP Trustee and an ESOP Committee member. (# 27 ¶ 21). From January 1, 2002 to August 2002, Defendant Griffin was the sole ESOP Trustee and an ESOP Committee member. (# 27 ¶ 22). From January 1, 2001 to December 31, 2001, Defendants Griffin and Stetson together served as the exclusive trustees and Committee members of the ESOP. (# 27 ¶ 23). Lastly, from April 1998 to December 30, 2000, Defendants Moriarty, Griffin and Stetson served as Trustees and Committee members of the ESOP. (# 27 ¶ 24).

On that basis, the plaintiffs filed a complaint in this Court in January 2003.(# 1). The plaintiffs have since amended their complaint on two separate occasions and to date the individual defendants have filed no responsive pleadings. Instead, Defendants Stetson, Griffin, Moriarty, and Leahy move to dismiss the Plaintiffs' Second Amended Complaint pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). (## 35, 38, 39).

### IV. The Claims

In Count I, the plaintiffs plead that the defendants unlawfully denied them their benefits under 29 U.S.C. § 1132(a)(1)(B).[3] (# 27 ¶¶ 40–46). Similarly, in Count II the

plaintiffs plead that the defendants breached their duties under 29 U.S.C. §§ 1109 and 1132(a)(3). (# 27 ¶¶ 47–52). Furthermore, under Count III, the plaintiffs assert that the individual defendants breached their duties under 29 U.S.C. §§ 1109 and 1132(a)(3). (# 27 ¶¶ 53–57). Lastly, under Count IV Eggert pleads a breach of contract claim against MPC only. (# 27, ¶¶ 58–62). Count IV is not addressed in this Memorandum and Order, however, since only the individual defendants have moved to dismiss the case.

In sum, the individual defendants collectively assert that the plaintiffs' claims against them must fail because the plaintiffs lack standing to assert the above-mentioned claims under ERISA. Likewise, the individual defendants also assert that the plaintiffs' second amended complaint fails to state a claim because they fail to allege sufficient facts to support their allegations. (# 37, p. 12). In addition, it is the individual defendants' position that Count I of the plaintiffs' Second Amended Complaint fails on the grounds that the complaint does not state a claim under § 1132(a)(1)(B). (# 37 p. 13). Lastly, the individual defendants posit that Counts II and III of plaintiffs' Second Amended Complaint fails because the relief sought is not available under ERISA. (# 37, p. 14).

### V. Discussion—The Issue of Standing to Bring ERISA Claims

The plaintiffs brought this action pursuant to ERISA, 29 U.S.C. § 1132(a)(2). Section 1132(a)(2) provides that in order to have standing under ERISA, a plaintiff must qualify as either a participant, a ben-

---

**3.** Even though Count I is labeled *"Plaintiffs vs. Defendants"* (see # 27, p. 8), in another pleading relating to the entry of a default against the ESOP, the plaintiffs state the following: "In fact, Count 1 is not directed to the individual defendants at all (who are instead targeted by Counts II and III), but in-

stead seeks to compel the ESOP to pay Plaintiffs their outstanding benefits due under the Plan and ERISA." (see # 63)(emphasis in original). So that there is no doubt in the matter, the motions to dismiss will be allowed as to Count I. See "Conclusion and Order," infra.

eficiary, or a fiduciary (or be the Secretary of Labor) within the meaning of section 1132(a) of the statute. See Title 29 U.S.C. § 1132(a) (1985). Thus, the plaintiffs must qualify under one of the above-mentioned classes in order to have standing to bring an ERISA claim. If the plaintiffs can show that they qualify as either participants, beneficiaries, or fiduciaries, ERISA authorizes them to bring a civil action for breach of any fiduciary duty proscribed by 29 U.S.C. § 1109(a). Accordingly, the task at hand is to determine whether the plaintiffs qualify as Plan "participants" within the meaning of ERISA; the plaintiffs clearly are not beneficiaries or fiduciaries.[4]

### A. What is a "Participant" under ERISA?

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 104, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court specifically addressed the question of what it means to be a participant under ERISA. According to the Court, "[t]he term 'participant' is naturally read to mean either 'employees in, or reasonably expected to be in, currently covered employment,' . . . or former employees who 'have . . . a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits.' " *Firestone*, 489 U.S. at 117, 109 S.Ct. 948 (citations omitted). Simply stated, there are two distinct categories of ERISA "participants": 1) employees in, or reasonably expected to be in, currently covered employment; or 2) former employees who have either a reasonable expectation of returning to covered employment or a "colorable claim" to vested benefits. *Id.* Therefore, since the plaintiffs in this case are neither current employees nor have a reasonable expecta-

tion of returning to covered employment, the plaintiffs must have a colorable claim to vested benefits in order to be participants and to thus have standing to pursue an ERISA claim.

A relatively recent decision from the First Circuit seems to criticize other prior cases in which courts had defined "participant" very narrowly, stating that ERISA's legislative history "indicates that Congress intended the federal courts to construe the Act's jurisdictional requirements broadly in order to facilitate enforcement of its remedial provisions. . . ." *Vartanian v. Monsanto Co.*, 14 F.3d 697, 702 (1 Cir., 1994). In Vartanian, the plaintiff former employee brought an ERISA action against his former employer, alleging that the employer had breached its fiduciary duty and engaged in misrepresentation when it induced the employee to retire several months before the company was going to institute a more favorable early retirement package. Despite the fact that the company knew that plans for the new early retirement package were underway, it did not inform the plaintiff thereof, and thus the plaintiff retired without receiving the benefits of the new retirement package. The plaintiff alleged that "he was denied a reasonable opportunity to make an informed decision about when to retire because [the company] failed to disclose its consideration of an enhanced severance program" and that had he known about the program, he would have worked longer in order to become eligible for benefits under the new plan.

The Vartanian court noted that the " 'ultimate question is whether the plaintiff is within the zone of interests ERISA was

---

4. A beneficiary under ERISA is "a person designated by a plan participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). A fiduciary is one who

"exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i).

intended to protect'" (14 F.3d at 701–02) (quoting *Astor v. Int'l Business Machines Corp.*, 7 F.3d 533, 538–39 (6 Cir., 1993)) and then held that:

> where an employee alleges a decision to retire based on alleged misrepresentations by his employer amounting to a breach of fiduciary duty, and the true facts[ ] are not available to the employee until after the employee has received all his vested benefits under a plan; and further, where the employee shows that in the absence of the employer's breach of fiduciary duty he would have been entitled to greater benefits than those which he received, then his receipt of payment cannot be used to deprive him of "participant" status and hence, standing to sue under ERISA. Thus, [the plaintiff] has standing to assert his claims under ERISA even though he has already received his benefits under the...[old] Plan.

*Vartanian*, 14 F.3d at 703.

The court noted further that its holding was consistent with the Fifth Circuit's decision in *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1221 (5 Cir., 1992), cert. denied, 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992), in which the court stated that "'it would seem...logical to say that but for the employer's conduct alleged to be in violation of ERISA, the employee would be a current employee with a reasonable expectation of receiving benefits, and the employer should not be able through its own malfeasance to defeat the employee's standing.'" *Vartanian*, 14 F.3d at 703 (quoting Christopher, 950 F.2d

at 1221). *See also Olson v. Chem–Trend Inc.*, No. 94–CV–75201, 1995 WL 866221, *3 (E.D.Mich., May 30, 1995) quoting *Kuper v. Quantum Chem. Corp.*, 829 F.Supp. 918, 922 (S.D.Ohio, 1993)(holding that the receipt of vested benefits [does not] "automatically divest plan participant of ERISA standing."). Despite this position, however, the Vartanian court did acknowledge cases frequently cited for the proposition that the term "participant" excludes plaintiffs who have already received all of their vested benefits in the form of a lump sum payment. See Vartanian, 14 F.3d at 702 (citations omitted).[5]

Nonetheless, despite Vartanian's analysis, the First Circuit's decision in *Crawford v. Lamantia*, 34 F.3d 28 (1 Cir., 1994), cert. denied, 514 U.S. 1032, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995), decided approximately seven months after Vartanian, appears to have "cut back sharply on Vartanian's broad approach to ERISA standing by emphasizing literal compliance with the Firestone definition of participant in a standing context." *Nahigian v. Leonard*, 233 F.Supp.2d 151, 166 (D.Mass., 2002). In Crawford, a plaintiff former employee filed a complaint against the trustees of his ESOP which sought "recovery on behalf of the ESOP for breach of fiduciary duty for the Trustees' failure to act for the exclusive benefit of the participants and beneficiaries of the ESOP plan." *Crawford*, 34 F.3d at 31. The plaintiff, who had been terminated, negotiated an extension of salary and benefits followed by an unpaid leave of absence. *Id.* at 30. He then

---

5. Interestingly, on remand the District Court dismissed Vartanian's claim that the employer "had breached an ERISA duty by failing to disclose its prospective plans to reduce staffing, but permitted the claims of misrepresentation about the possibility of an early retirement incentive plan to proceed." *Vartanian v. Monsanto Co.*, 131 F.3d at 266 (1 Cir., 1997)(citing *Vartanian v. Monsanto Co.*, 880

F.Supp. 63, 70–71 (D.Mass., 1995)). However, after discovery, the District Court granted the defendant's motion for summary judgment because there was no enhanced severance package under "serious consideration" at the time the plaintiff retired. *Vartanian v. Monsanto Co.*, 956 F.Supp. 61, 66 (D.Mass., 1997). The First Circuit affirmed the District Court's decision. *Vartanian*, 131 F.3d at 266.

resigned and approximately one year thereafter elected to receive his total vested distribution from his ESOP in the form of the Company's common stock. See Crawford, 34 F.3d at 31. The plaintiff alleged that the plan had paid too much for the company's stock in a loan agreement with the company, which the plaintiff asserted in his complaint was a breach of fiduciary duty because the Trustees did not act for the exclusive benefit of the participants and beneficiaries of the ESOP plan. Id. at 30–31. The plaintiff alleged in sum that " 'but for' defendants' breach of duty, he would have received additional, vested benefits at the time he received his lump sum payment from the ESOP." Id. at 32.

The Crawford court ultimately held that the plaintiff lacked standing as a participant under ERISA, stating that the "plaintiff has failed to show that the defendants' alleged breach of fiduciary duty had a direct and inevitable effect on his benefits." Crawford, 34 F.3d at 33. In addressing the plaintiff's argument that "but for" the defendants' breach of duty, he would have received additional, vested benefits at the time he received his lump sum payment, the court determined that the employer's alleged overpayment caused the plaintiff no loss of benefits and that even had the shares been correctly valued, it "would not have resulted in a similar loan being made to the ESOP with any excess cash to be distributed to the accounts of the participants." Crawford, 34 F.3d at 33. In other words, the plaintiff in Crawford "lacked standing as a participant because he was an ex-employee (with no prospect of returning to covered employment) who had no claim for vested benefits." Nahigian, 233 F.Supp.2d at 166.

However, "Crawford's impact on Vartanian is somewhat uncertain" since "rather than overruling Vartanian, [Crawford] weakly distinguished it by saying that Vartanian 'did not involve a situation, . . . where the plaintiffs could not establish that they were former employees with a colorable claim to vested benefits when faced with a motion for summary judgment.' " Nahigian, 233 F.Supp.2d at 167 (stating that "[i]t is unclear what the court meant by this [statement], other than that the Crawford decision occurred on a motion for summary judgment, while the Vartanian decision occurred on a Rule 12(b)(6) motion to dismiss."). Moreover, notwithstanding the Crawford decision, recent decisions by Judge Ponsor appear to favor Vartanian's "zone of interest" approach over Crawford's literal interpretation of Firestone Tire & Rubber Co. v. Bruch. For example, in Sotiropoulos v. Travelers Indem. Co. of Rhode Island, 971 F.Supp. 52, 54–55 (D.Mass.1997), the court denied the defendant's motion for summary judgment where the plaintiff ex-employee, who had no prospects of returning to covered employment, sued for long-term disability benefits accrued after she was allegedly wrongfully terminated from the plan, and thus technically was not vested. As support for this stance, Judge Ponsor cited Vartanian as well as the Sixth Circuit's "zone of interest" interpretation as enunciated in Astor v. International Bus. Mach. Corp., 7 F.3d at 538–39 where the court held that "former employees who are within the "zone of interests" ERISA was intended to protect are "participants" for purposes of standing." Sotiropoulos, 971 F.Supp. at 54–55. See also Duncan v. Santaniello, 900 F.Supp. 547, 556–57 (D.Mass., 1995) (Ponsor, J.) (following "zone of interest" analysis and allowing former fiduciaries, who had been sued by beneficiaries for breach of fiduciary duty, to sue other former fiduciaries for contribution, noting that this serves ERISA's purpose of enforcing fiduciary responsibilities).

Nonetheless, despite Judge Ponsor's recent decisions, it is clear that "[f]or the most part,...since Crawford, Vartanian has generally been read narrowly as creating an exception to the Firestone definition of participant, only where the employee would still be a participant in the plan, and thus entitled to higher benefit levels but for the employer's malfeasance." *Nahigian*, 233 F.Supp.2d at 167. *See also Boucher v. Williams*, 13 F.Supp.2d 84, 103 (D.Me., 1998) (holding "[i]n light of Crawford the Court declines to extend Vartanian's holding to situations involving non-vested welfare benefits where the alleged breach of fiduciary duty resulted in no redressable harm to Plaintiffs....").

██ Thus, the rule that can be gleaned from the cases discussed above is that in the First Circuit, in general, a plaintiff must qualify as a "participant" as that term is defined in Firestone in order to have standing to pursue an ERISA action with the only exception being that where the plaintiff employee would still be a participant in the plan and entitled to higher benefit levels but for the employer's malfeasance, he still will have standing to pursue the ERISA claim.

### B. Are Eggert and Harrison "Participants"?

As discussed above, the plaintiffs' only chance of proving standing under ERISA is to establish that they are "participants" as interpreted in the Firestone decision; to do so, they must show that they are former employees who have a colorable claim to vested benefits.[6] See *Firestone*, 489 U.S. at 117, 109 S.Ct. 948. To establish a "colorable claim" it must be shown that the claim is "not frivolous" and that it is "for vested benefits." *Hupp v. Experian Corp.*, 108 F.Supp.2d 1008, 1014

(N.D.Ill., 2000) (citations omitted). For a claim "[t]o be deemed 'frivolous,' a claim would have to be based on a legal theory that is 'so out of line with existing precedent' that it would not meet the 'low threshold of the colorable requirement.'" *Id.* (citing *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 790 (7th Cir., 1996)). In my opinion, the plaintiffs have set forth "colorable claims."

The next question is whether the claims as for "vested benefits"? Taking the "benefit" part of the phrase first, it is clear that the claims relate to a "benefit" provided by the Plan. The right to require the Company to repurchase the stock is a right provided by the Plan. In addition, Section 10.04 of the **Plan** provides "...that if the Company elects to pay for such offered shares in installments, such obligation to pay shall bear interest at a reasonable rate and **shall be adequately secured**." (# 27, Exhibit A)(emphasis added). That the payments must be "adequately secured" is a "benefit" to the employees, and it is a benefit provided by the Plan. Thus, it is my opinion that the plaintiffs bring colorable claims for benefits.

██ Are the plaintiffs bringing a colorable claim for "vested" benefits? The word "vested" should not be given a narrow, technical reading...but a more expansive interpretation." *Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 791 (7 Cir., 1996). Continuing, the Court in Panaras wrote:

> Under such an interpretation, standing is available to any former employee who has a colorable claim to benefits which the employer promised to provide pursuant to the employment relationship and

---

6. As already mentioned, there is no question that the plaintiffs here are not current employees of MPC, nor are they former employ-

ees who have a reasonable expectation of returning to covered employment.

which a non-frivolous argument suggests have accrued to the employee's benefit. *Panaras*, 74 F.3d at 791.

To the same effect are *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978–9 (7 Cir., 1999) and *Hupp*, 108 F.Supp.2d at 1014.

Under this reasoning, the plaintiffs had a vested right under the Plan to have their ability to collect on the notes protected by "adequate security." The plaintiffs were entitled to that benefit as of the time they received the notes and were entitled to have the security in place for the time period during which the notes were required to be paid.

The case of *Roth v. Sawyer–Cleator Lumber Co.*, 16 F.3d 915 (8 Cir., 1994) is of interest on this point. The facts are, for all practical purposes, identical to those of the instant case. The only difference is that when exercising their "put" options, the employees sold the stock back to the ESOP rather than the employer. They received a promissory note from the ESOP "...providing for periodic payments from the ESOP over a ten-year period." *Roth*, 16 F.3d at 916. The employer experienced financial difficulties, ceased contributing to the ESOP, and, as a result, the ESOP did not have the wherewithal to make the periodic payments on the notes and came into default. *Id.* at 917.

The lower court in Roth granted summary judgment to the trustees of the ESOP on the ERISA claim that they breached their fiduciary duties finding "...that the trustees fulfilled their fiduciary duties because the Company stock that secured the plaintiffs' promissory notes constituted 'adequate security' under federal law". *Id.* The Eighth Circuit reversed, finding that there were genuine issues of fact as to "whether the trustees' conduct before making the decision to secure the plaintiffs' notes with Company stock was objectively reasonable under the circumstances." *Id.* at 918.

Interestingly, there appears to have been no issue with regard to whether the plaintiffs had standing; the parties agreed that the plaintiffs were participants at the District Court level, *Roth v. Sawyer–Cleator Lumber Co.*, 805 F.Supp. 1475, 1478, n. 1 (D.Minn., 1992), and the Eighth Circuit did not raise it sua sponte on appeal. But in reversing the grant of summary judgment, the Eighth Circuit certainly held that the plaintiffs had a cause of action against the ESOP trustees for breach of fiduciary duties in connection with the provision of adequate security. It is hard to imagine that with this holding, the Eighth Circuit would have had any difficulty whatsoever in holding that the plaintiffs stated a colorable claim to vested benefits so as to have standing under the Firestone decision.

The case of *Cofer v. The Audichon Co.*, 1986 U.S. Dist. LEXIS 23120 (N.D.Ga., 1986) is to the same effect. Summary judgment was granted on an ERISA claim by former employees against an employer that installment payments under a "put" option were not adequately secured. *Id.* at * 3–4. Again, standing does not appear to have been raised, but it can hardly be said that the plaintiffs did not have a colorable claim to vested benefits if summary judgment was granted in their favor.

In *Babcock v. Computer Assoc. Int'l, Inc.*, 186 F.Supp.2d 253, 259 (E.D.N.Y., 2002), a case upon which the plaintiffs rely, the plaintiff participated in an ESOP where the main purpose of the Plan was to enable employees to invest on a tax free basis in the Company's stock. *Babcock*, 186 F.Supp.2d at 255. The complaint alleged that the plaintiff was a vested participant in a Plan and that he was entitled to benefits under the Plan. See *id.* at 259. Moreover, the plaintiff alleged "that the defendants failed to properly follow the terms of the Plan and breached their fidu-

ciary duties to the plaintiff and other similarly situated individuals in violation of ERISA." *Id.* at 255. It was alleged that the terms of the Plan permitted participants to obtain their benefits upon leaving their employment, yet the defendants did not permit the plaintiff to obtain his benefits. *Id.* at 259. The court held that "[t]hese facts, which the Court must accept as true in ruling on a motion to dismiss, sufficiently allege a 'colorable claim' to benefits under the Plan." *Babcock*, 186 F.Supp.2d at 259.

Babcock supports the plaintiffs' position. In the instant case, one of the benefits of the Plan to which they were entitled was that the installment payments be backed by "adequate security", and the plaintiffs allege that they did not receive this benefit. Further support for plaintiffs' position is found in the case of *Werner v. Morgan Equipment Co.*, 1992 WL 453355 (N.D.Cal., 1992) in which it was held that former employees had a colorable claim to vested benefits when they challenged a valuation made on their "put" options when the employer ceased to make contributions to the ESOP. *Werner*, 1992 WL 453355 at * 2–3. The employees had received cash, stock and the put option, and the defendants argued that this "...represented a complete distribution of vested benefits." Id. at * 3. That argument was rejected; the court held that the right to a particular exercise price of the "put" option price did represent an additional benefit of the Plan, writing that:

> If the put exercise price is not considered to be a 'benefit' of the plan, then participants, such as plaintiffs, would never have standing to challenge whether the employers [sic] valuation was made in good faith and based on fair

market value in compliance with the Treasury Regulations.

*Id.* at * 3.[7]

In summary, I rule that the plaintiffs have standing to bring ERISA claims because they have shown a colorable claim to vested benefits.

## VI. Further Discussion—Rule 12(b)(6), Fed.R.Civ.P.

I find that Count III should be dismissed. To a large extent it is duplicative of Count II. For example, paragraph 54(A) (Count III) is a general allegation which is more specifically pled in paragraph 48(B) (Count II). To the extent that Count III alleges more in paragraph 54(A) than is pled is paragraph 48(B), it is a conclusory allegation which is unsupported. Similarly, paragraphs 54(B) through (E) contain conclusory allegations pled "on information and belief" which are likewise unsupported by facts.

Thus, the plaintiffs have not put forth sufficient facts to support the claims contained in Count III. It is axiomatic that on a motion to dismiss for failure to state a claim, courts "require more than conclusions or subjective characterizations." *Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1 Cir., 1982), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983). The plaintiff must make "at least the allegation of a minimal factual setting. It is not enough to allege a general scenario which could be dominated by unpleaded facts...." *Id.* Or as Judge Selya put it:

> In connection with run-of-the-mill motions brought under Rule 12(b)(6), a reviewing court is obliged neither to "credit bald assertions, periphrastic circumlocutions, unsubstantiated conclu-

7. "Treasury Regulation § 54.4975–11(d)(5) provides that put option valuations of ESOP stock must be made in good faith and based

on all relevant factors for determining fair market value of securities." *Werner,* 1992 WL 453355 at * 3.

sions, or outright vituperation." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990), nor to honor subjective characterizations, optimistic predictions, or problematic suppositions. *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir. 1989). "[E]mpirically 'unverifiable' conclusions", not "logically compelled, or at least supported by the stated facts," deserve no defenerence. *Id.*

*AVX Corp.,* 962 F.2d at 115 (Emphasis supplied); see also *Bartolomeo v. Liburdi,* No. 97–0624–ML, 1999 WL 143097, *4 (D.R.I., Feb.4, 1999)("Under a Rule 12(b)(6) motion to dismiss, a claim must be supported by underlying facts and not mere conclusory allegations.").

## VII.   Further Discussion—Other Issues

To the extent that the defendants' motions raise other issues, the Court has determined that they are more appropriately considered on a motion for summary judgment after discovery and the development of a factual record.   This applies to the question of available remedies.

## VIII.   Conclusion

For the reasons stated it is hereby ORDERED that the Motion of Defendant Brewster Stetson and John T. Leahy to Dismiss Plaintiffs' Second Amended Complaint (# 35), the Motion of Gerard J. Griffin, Jr. to Dismiss Plaintiffs' Second Amended Complaint (# 38) and Defendant James Moriarty's Motion to Dismiss Plaintiffs' Second Amended Complaint (# 39) be, and the same hereby are, ALLOWED as to Counts I and III and otherwise DENIED without prejudice to filing a motion for summary judgment after discovery.